[Civ. No. 6641.   Fourth Dist.   Feb. 15, 1962.]

B. S. B. CONSTRUCTION COMPANY, Plaintiff and Respondent, v. REX CONSTRUCTION COMPANY, Defendant and Appellant.

Ernest F. Shelander for Defendant and Appellant.

Palmer & Tookey and William A. Tookey for Plaintiff and Respondent.

COUGHLIN, J.—The question for determination on this appeal is whether the trial court erred in confirming an arbitration award.

Rex Construction Company, the appellant herein, as the prime contractor, and B. S. B. Construction Company, the respondent herein, as a subcontractor, executed an agreement in writing whereby the latter was to perform certain cement work required under the prime contract, which involved the construction of a building for a firm named Hyer and Perkins.

The subcontract contained the following arbitration agreement: "Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules Committee of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

In due course, the subcontractor undertook its work; on July 20, 1959, received a letter from the prime contractor referring to 13 deficiencies therein, and demanding that they be corrected; and on July 28, 1959, received a further letter from the prime contractor stating that the cement floor laid by the subcontractor was less than the specified thickness, that the wire mesh therein was not laid at the required distance from the top thereof, and that unless the floor were removed and replaced in accord with the plans and specifications the prime contractor would proceed to complete the work at the subcontractor's expense. The subcontractor replied by letter dated July 31, 1959, stating that it was unnecessary to remove the floor, and that any action of the prime contractor to do so would be the latter's sole responsibility. Shortly thereafter the parties agreed to and did submit the controversy thus presented to arbitrators for arbitration, as required by their contract. On August 28, 1959, the arbitrators made a report in the nature of an award in which they set forth their conclusions that 10 of the 13 deficiencies could be corrected; that 3 of the 13 deficiencies were minor in character; and that the failure of the floor to precisely comply with the plans and

specifications did not affect the "full structural integrity, quality or intended use" of the building.

In the meantime, the owner of the building, Hyer and Perkins, by letter dated August 24, 1959, demanded that the prime contractor remedy certain deficiencies in the construction work, including the failure of the floor to conform to the plans and specifications. The prime contractor acceded to these demands and thereafter, among other things, removed and replaced the floor.

On September 24, 1959, the subcontractor filed a petition in the Superior Court of Orange County asking that the award of the arbitrators be returned to them with instructions to specifically determine the monetary damages sustained by the prime contractor as a result of the alleged deficiencies claimed by it and the net amount due the subcontractor. After hearing, the court made its order remanding the matter to the arbitrators for further proceedings; directed them to determine the amount of damages suffered with respect to the 13 items in the letter of July 20th; ordered them to "ascertain the amount of the monetary damages done to REX CONSTRUCTION COMPANY by virtue of any defect in the performance with respect to the construction of the floor in the subject factory building"; and further ordered them "to ascertain the agreed contract price of the job, the agreed extras and costs thereof, the amounts of money paid by REX CONSTRUCTION COMPANY to B.S.B. CONSTRUCTION COMPANY pursuant to said contract and/or contract for extras, and the amounts of money due on the contract and for extras, the total amount of offsets on account of damages hereinbefore referred to, and the balance, if any, due either REX CONSTRUCTION COMPANY or B.S.B. CONSTRUCTION COMPANY, as the case may be."

On May 5, 1960, the arbitrators made their award in writing which, in substance and reasonably construed, stated that 11 of the 13 claimed deficiencies could and should be corrected; that two of the 13 deficiencies were minor in character; that as a result of these 13 deficiencies the prime contractor had been damaged in the sum of $1,251.65 which "will be sufficient and ample to make such corrections as hereinbefore stated"; that the deficiency in the floor "has not affected the full structural integrity, quality, or the intended use of the building"; that by reason of variances from the plans and specifications, which impliedly the trial court later determined related to the floor, the prime contractor was damaged in the sum of $656.37; that there was unpaid under the original

contract, including agreed extras, the sum of $5,942.46; that the "total damages suffered" by the prime contractor and the total of all obligations paid by it in favor of the subcontractor amount to "the total sum of $4,512.91"; that the net amount unpaid to the subcontractor was $1,430.05[1]; and that they awarded the subcontractor the "net sum of $1,430.05." By an addenda to their award the arbitrators stated that the prime contractor, pursuant to its agreement with the owner to make certain corrections, had done additional work on the subject building, including that in connection with two of the 13 items referred to in their report and replacement of the floor, for which it expended the total sum of $13,306.67.

The subcontractor moved the court to confirm the award. The prime contractor objected thereto and moved that the award be corrected, or that it be vacated and returned to the arbitrators for further consideration. The court confirmed the award. From the order of affirmance and from the order denying its motion to correct, modify or vacate, the prime contractor has taken this appeal.

The proceedings herein were taken pursuant to the provisions of sections 1280-1293 of the Code of Civil Procedure.

The prime contractor contends that the award should have been vacated as prescribed by section 1288 of the Code of Civil Procedure, under the provisions thereof requiring such "Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award, upon the subject matter submitted, was not made"; based its motion on these code provisions; and supported the same by affidavits from the arbitrators which, in substance, stated that they gave no consideration to the duty and responsibility of the prime contractor to the owner to correct the deficiencies referred to in the addenda to their report, because they believed their award was required to be in the form originally set forth under date of August 28, 1959; that the addenda was prepared to set out the actual costs of the prime contractor in making the corrections noted therein; and that they believed the court, on confirmation, would make an award with respect to the matters set forth therein. A counteraffidavit was filed by the subcontractor in which its attorney related a conversation between himself and one of the arbitrators, which occurred before the award was made, in which the arbitrator

[1]The 50-cent error in subtraction, under the principle of "*de minimis,*" is of no legal consequence.

stated, in substance, that the items of cost in question were not proper elements of damage, but should be referred to in the award, and that the measures taken by the prime contractor were not the result of any deficiency in performance by the subcontractor, but resulted from the agreement between the former and the owner; and in which conversation the attorney told the arbitrator, among other things, that the award as proposed, unless objection thereto was made, would result in payment to the subcontractor in the sum of $1,430.05. The contents of the written award made by the arbitrators, together with the affidavit of the attorney, adequately support a basis for rejection of the statements made in the affidavits of the arbitrators, if the court hearing the motion deemed it proper to do so.

The arbitrators' powers initially were conferred by and described in the contract of arbitration executed by the parties (*Flores* v. *Barman,* 130 Cal.App.2d 282, 287 [279 P.2d 81] ; *Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156, 184 [260 P.2d 156] ; *Screen etc. Guild* v. *Walt Disney Productions,* 74 Cal.App.2d 414, 415 [168 P.2d 983]), and ultimately were specifically fixed by and designated in the order of the court remanding the matter to them for further consideration. No attack is made upon this order. Under the circumstances, it is the measure of their powers, and the guide by which to determine whether they exceeded those powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. (*White* v. *Arthur,* 59 Cal. 33, 34; *Bierlein* v. *Johnson,* 73 Cal.App.2d 728, 733 [166 P.2d 644].)

The order in question directed the arbitrators to ascertain and determine the amount of damages with respect to the 13 deficiencies noted in the prime contractor's letter of July 20th; "the amount of monetary damages" sustained by the prime contractor " by virtue of any defect in the performance with respect to the construction of the floor"; all amounts payable under the contract by the prime contractor to the subcontractor; all amounts paid by the prime contractor to the subcontractor; the amount of money due on the contract, including extras; the total amount of offsets on account of damages; and the balance, if any, due either to the prime contractor or the subcontractor as the case may be. When the award, as made, is compared with the requirements of the order of submission, adequate compliance with the latter is at once.apparent. The prime contractor argues that the award

is uncertain and ambiguous; directs attention to different compilations possible thereunder; lays stress on particular language; queries the reason for adding the amount of the obligations paid by the prime contractor for the subcontractor to damages suffered by the former; claims that this total represents only the amount of damages sustained by the prime contractor, and states that it is in conflict with the amount theretofore expressed; contends that the award involves a miscalculation because the amount of costs which it incurred, as related in the addenda, were not added to the amount of damages which it sustained as set forth in the main parts of the award; and thus attempts to portray a picture of confusion. Nevertheless, when compared with the provisions of the order of submission, the award is reasonably certain; establishes that the arbitrators did what they were told to do; and fully met the implied requirements of section 1288 that it should be mutual, final and definite. All of the preliminary issues presented by the order of submission were disposed of, and as a "mutual, final and definite award" the arbitrators stated, "we . . . do therefore, award to B. S. B. Construction Co., the net sum of $1,430.05."

■■ "A decision simply that one of the parties should pay the other a sum of money is sufficiently determinative of all items embraced in the submission." (*Sapp* v. *Barenfeld,* 34 Cal.2d 515, 523 [212 P.2d 233].)

The prime contractor contends that the statements of the arbitrators in their addenda to the award, together with the statements made in their affidavits, establish that they imperfectly executed the powers conferred upon them, i.e., that they did not consider the damages sustained by it in removing and replacing the floor and other parts of the work done by the subcontractor. ■■ The affidavits in question properly were before the court for consideration at the time of the hearing upon the motions in question. (*Sapp* v. *Barenfeld, supra,* 34 Cal.2d 515, 523.) However, the court was not required to accept the statements therein as true if a rational ground existed for rejecting them. (*Hicks* v. *Reis,* 21 Cal.2d 654, 659 [134 P.2d 788].) Such a ground is found in the impeaching statements contained in the affidavit filed on behalf of the subcontractor, and the contradictory statements appearing in the award itself. The trial court was entitled to conclude that the arbitrators determined that the expenses in question were not proper items of damages chargeable against the subcontractor. ■■ Their decision in this regard re-

sulted from a consideration of the merits of the controversy, and whether it was correct or incorrect is not a proper subject for judicial review. (*Sapp* v. *Barenfeld, supra,* 34 Cal.2d 515, 523; *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.,* 29 Cal.2d 228, 233 [174 P.2d 441]; *McKay* v. *Coca-Cola Bottling Co.,* 110 Cal.App.2d 672, 677 [243 P.2d 35]; *In re Frick,* 130 Cal. App. 290, 292 [19 P.2d 836].)

In support of its position that the arbitrators exceeded their powers, the prime contractor contends that their authority is limited to making an award in conformity with the terms of the subject contract and that the award as made is in direct conflict with these terms. Particular reference is made to the provisions of the contract that (1) payment was to be made only "after satisfactory completion and acceptance by the owner"; (2) the job was to be completed in strict conformity with the plans and specifications; (3) all changes and extras were to be authorized only by a writing; and (4) any deficiency was to be repaired or replaced by the subcontractor to the satisfaction of the owner. This contention is based on a false premise; arises from a failure to differentiate between those provisions of the contract which define and limit, either directly or indirectly, the subject matter of the arbitration, and thus limit the powers of the arbitrators, and those provisions which apply to that subject matter as defined and themselves may be the cause of arbitration; and is not sustained by the cases cited in support thereof, i.e., *Screen etc. Guild* v. *Walt Disney Productions, supra,* 74 Cal.App.2d 414, where the arbitration contract specifically provided that the award should not be in conflict with the express provisions of the agreement, and *Drake* v. *Stein,* 116 Cal.App.2d 779 [254 P.2d 613], where the arbitrators, in considering a dispute as to whether one of the parties had performed services as agreed, substituted a cash award in lieu of the unequivocally agreed consideration, i.e., a conveyance of real property. In the case at bar, the subject matter of the dispute concerned the subcontractor's alleged noncompliance with the contract; involved a determination respecting the requirement thereof; presented questions of interpretation as to the meaning of its provisions; and gave rise to issues of both law and fact. For example, the prime contractor contends the payment was not to be made until completion and acceptance by the owner, whereas the contract provides that payment should be made upon acceptance by the owner "and/or local governing author-

ities''; that the job was to be performed in strict compliance with the plans and specifications; whereas the subcontractor claims that substantial compliance was sufficient; that refusal by the owner to accept foreclosed recovery although the subcontractor contends that a claimed nonconformance could not be based on an arbitrary or unreasonably asserted refusal to accept; and that any deficiency was to be repaired or replaced to the prime contractor's satisfaction, when the only provision in the contract referred to defective parts discovered after acceptance. ▮▮▮ It now is settled that ''in the absence of some limiting cause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute.'' (*Crofoot* v. *Blair Holdings Corp, supra,* 119 Cal.App.2d 156, 186; *Sapp* v. *Barenfeld, supra,* 34 Cal.2d 515, 523; *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd., supra,* 29 Cal.2d 228, 235, 238; *Flores* v. *Barman, supra,* 130 Cal.App.2d 282, 286; *In re Frick, supra,* 130 Cal.App. 290, 292.) The provisions of the statute referred to are those contained in sections 1288 and 1289 of the Code of Civil Procedure. ▮▮▮ The parties to an arbitration provision agree that they will be bound by the decision of the arbitrators on the matters submitted for arbitration whether that decision determines disputed questions of law or fact, and whether it is right or wrong. (*Crofoot* v. *Blair Holdings Corp., supra,* 119 Cal.App.2d 156, 189; *Drake* v. *Stein, supra,* 116 Cal.App.2d 779, 785; *In re Frick, supra,* 130 Cal.App. 290, 293.) The provisions of the contract to which the prime contractor directs our attention, instead of placing limitations upon the powers of the arbitrators, were a source of the controversy presented to them, gave rise to issues of law and fact within the scope of that controversy, and the objections raised to the award go to the merits of the dispute rather than to the jurisdiction of the arbitrators, whose decision in the premises is not subject to judicial review.

The orders appealed from are affirmed.

Griffin, P. J., and Shepard, J., concurred.